VIRGINIA:

BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF MATTHEW TAYLOR MORRIS
VSB DOCKET NO.: 23-022-126787

## MEMORANDUM ORDER OF SUSPENSION

**THIS MATTER** came on to be heard on March 24, 2023, before a panel of the Disciplinary Board consisting of David J. Gogal, Second Vice Chair ("Chair"); Reba H. Davis, Lay Member; Joseph D. Platania; Jennifer D. Royer; and Alexander Simon. The Virginia State Bar (the "VSB") was represented by Seth T. Shelley, Assistant Bar Counsel ("Bar Counsel"). Matthew Taylor Morris (the "Respondent"), *pro se*, appeared in person.

The Chair polled the members of the Board Panel as to whether any of them was conscious of any personal or financial interest or bias which would preclude any of them from fairly hearing this matter and serving on the panel, to which inquiry each member responded in the negative. Lisa A. Wright, court reporter, Chandler and Halasz, Inc., PO Box 9349, Richmond, Virginia 23227, (804) 730-1222, after being duly sworn, reported the hearing and transcribed the proceedings.

All legal notices of the date and place were timely sent by the Clerk of the Disciplinary System ("Clerk") in the manner prescribed by the Rules of the Supreme Court of Virginia, Part Six, Section IV, Paragraph 13-18 of the Rules of Court.

The matter came before the Board on the District Committee Determination for Certification by the Second District, Section II, pursuant to Part 6, Section IV, Paragraph 13-18 of the Rules of the Supreme Court of Virginia involving misconduct charges against the Respondent.

Prior to the proceedings and at the final Pretrial Conference held on December 22, 2022, VSB Exhibits 1-10 were admitted into evidence by the Chair, without objection from the Respondent. Subsequent to the final Pretrial Conference, Bar Counsel and Respondent reached an agreement on Stipulations of Fact and Violations, which were admitted into the evidence as VSB Exhibit 11.

## MISCONDUCT

The parties stipulated to the following facts and violation:

I.  Stipulation of Facts

1. Respondent was admitted to the Virginia State Bar ("VSB") in 2012. At all relevant times, Respondent was a member of the VSB.

2. On August 3 and 4, 2022, Respondent sent multiple threatening text messages to a former client, Travis Lawler ("Lawler"). In those text messages. Respondent also threatened to injure a fellow attorney, Jarrett McCormack ("McCormack"). Both Lawler and McCormack were witnesses in a prior bar complaint investigation against Respondent.

3. Respondent wrote that Lawler "rat[ted] memoir the (sic) the VSB," that Lawler was "a snitch and deserve[d] death," and that Lawler would "get pain and torture." Respondent stated he would "hunt [Lawler] down" and "that ain't a threat it's a promise." Respondent stated that he didn't care "about ethics in the law anymore" and that Lawler "should have thought before [he] woke this sleeping dog." Respondent warned Lawler that he should "back off" if Lawler wanted "to see [his] kids again." Respondent stated he doesn't "make threats boss I end situations."

4. Lawler suggested they meet and fight. Respondent wrote that Lawler would "hit the ground bleeding before you even see me."

2

5. Lawler asked Respondent to "stop making threats" and to "[l]eave me alone please." Respondents wrote that he would "let [his] dog rip [Lawler's] throat" and warned Lawler to "keep your head on a swivel." Respondent stated that he has "represented a lot of really bad people over the past decade" who "still owe [Respondent] favors." Respondent also threatened to beat and injure McCormack. Respondent wrote that he is "not a lawyer anymore" but "a demon on a warpath."

6. When interviewed by VSB Investigator John Pucky, Respondent admitted to sending the text messages to Lawler. Respondent asserted that Lawler threatened him and his family first and Respondent had to protect his family.

7. Respondent did not deny sending any of the text messages. Respondent did not state that he called police in response to Lawler's perceived threats.

II.  <u>Stipulations of Violation</u>

**RULE 8.4    Misconduct**

It is professional misconduct for a lawyer to:

\* \* \*

(b) commit a criminal or deliberately wrongful act that reflects adversely on the

lawyer's honesty, trustworthiness or fitness to practice law[.]

Based upon the Respondent's stipulation of facts and violation of Rule 8.4(b), the Board found by clear and convincing evidence that the Respondent violated Rule 8.4(b) of the Rules of Professional Conduct.

## SANCTION

In the sanction phase of the hearing, both parties waived opening statements. The Board then received further evidence and argument as to the appropriate sanction to be imposed based

upon the finding of the Rule violation cited above as well as any evidence of aggravating and mitigating factors. The Board received a certification of Respondent's prior disciplinary record, which was received as VSB Exhibit 12, without objection. Additionally, VSB Exhibit 13 and Respondent's Exhibits 1 and 2 were marked and received into evidence without objection. The Board heard testimony from the following witnesses, who were sworn under oath: Travis Lawler, who appeared via telephone without objection from the Respondent; Jarrett McCormack, Esquire, who appeared via video conference without objection from the Respondent; VSB Investigator John Pucky; and Respondent.

As evidence of aggravating factors for the Board's consideration, the VSB presented the testimony of Travis Lawler, a former client, who testified that although he initiated the text messages with the Respondent, he feared for his life because Respondent threatened him in different ways and Respondent carries a gun. Mr. Lawler only agreed to appear at the hearing if he could appear remotely so that he could avoid Respondent. Mr. Lawler did not report Respondent's texts to the police, but he did report them to his attorney, Jarrett McCormack, who subsequently reported the threats to local law enforcement. Mr. Lawler acknowledged that he did offer to fight Respondent and offered a location for the fight but did not pursue the fight because Respondent told him that he would "bury me there."

Investigator John Pucky testified that he had interviewed both Mr. Lawler and Mr. McCormack as witnesses to a previous bar complaint against Respondent.[1] Mr. Pucky testified that Mr. Lawler did not wish to cooperate with his investigation into the current matter because he feared Respondent.

---

[1] The complaint did not result in any certification of misconduct by the VSB.

4

Mr. Pucky also testified that, after some initial difficulty, Respondent was cooperative with this investigation. Respondent reported having a difficult time in his life personally and professionally but that he had made changes, which included closing his private practice and taking employment with a Commonwealth Attorney. Respondent reported that his texts to Mr. Lawler were in response to a perceived threat from Mr. Lawler to his fiancé. Respondent acknowledged that he perceived himself to have an alter ego during that time – a demon that he named "Levi," which was short for "Leviathan."

In mitigation, Respondent testified that in sending the text messages to Mr. Lawler he was protecting himself and his family and that the conduct occurred during a time in his life when he was "at rock bottom" both personally and professionally. He also reported being on a prescription medication that was not appropriate for him. Respondent did not present any evidence of any threats to his family or any evidence of any medical condition or prescription management issues. After the altercation with Mr. Lawler, Respondent testified that he stopped the medication and joined a martial arts program. Respondent testified to being remorseful for his conduct.

Respondent presented two character reference letters to the Board, which were received as Respondent's Exhibits 1 and 2.

In aggravation, the Board considered the Respondent's prior disciplinary history, which included two public reprimands with terms, and the recency of those disciplinary decisions to the misconduct in issue in this matter; multiple offenses with four prior bar complaints resulting in the imposition of discipline; the vulnerability of the victim in that his victim was a former client who participated in the investigation of a bar complaint against Respondent; his substantial experience in the practice of law; and illegal conduct as evidenced by sending threats over text

5

message. In mitigation, the Board considered the Respondent's testimony of personal or emotional problems; his cooperation with the Bar in that he stipulated to the misconduct allegations against him and the violation of the Rules of Professional Conduct; and his character or reputation as evidenced by the two written character references submitted on his behalf.

After due deliberation, the Board reconvened to announce the sanction imposed. The Chair announced the sanction as a six (6) month suspension with an effective date of April 24, 2023, with the terms set forth below.

This sanction is independent of, and does not alter the terms of the January 23, 2023, Memorandum Order, a public reprimand with terms, which provided for an additional alternative sanction for misconduct occurring after the effective date of that Order. The Board construes the January 23, 2023, Memorandum Order to contemplate the commission of misconduct giving rise to a violation of the Rules of Professional Conduct after the entry of such order. As the conduct in issue in this matter occurred prior to the effective date of the January 23, 2023, Memorandum Order, the Board does not find that the misconduct in this case constitutes a violation of the January 23, 2023, Memorandum Order. In the event that the Board's findings in this matter are subsequently considered to constitute a violation of the January 23, 2023, Memorandum Order, the Board intends for this six-month suspension to run concurrently with the alternative sanction of six months set forth in that January 23, 2023, Memorandum Order.

Accordingly, it is ORDERED that the Respondent, Matthew Taylor Morris's, license is suspended, effective April 24, 2023, for a period of six months, with the following additional terms:

1. Not later than 30 days after the entry of this order, Respondent will contact the Judges and Lawyers Assistance Program ("JLAP") to schedule an evaluation to be conducted by

JLAP. Thereafter, Respondent will fully participate in the evaluation conducted by JLAP and will implement all of JLAP's recommendations. Respondent will enter into a written contract with JLAP for a minimum period of 12 months and will comply with the terms of such contract, including meeting with JLAP and its professionals, as directed.

Respondent shall authorize JLAP to provide monthly reports to Bar counsel stating whether Respondent is in compliance with JLAP's contract with Respondent. Pursuant to Rule 13-18.0, Bar counsel will monitor Respondent's compliance with the JLAP contract. If a JLAP representative and Bar counsel determine that Respondent is not in substantial compliance with his contract, Bar counsel will serve notice requiring Respondent to show cause why the alternative disposition will not be imposed.

2. Respondent must not engage in any conduct that constitutes a violation of the Rules of Professional Conduct for a period of one year after the date of the entry of the Summary Order entered in this matter.

3. If Respondent fails to comply with these terms, the alternative sanction is the suspension of Respondent's license for an additional period of six months to run consecutively to the term of this suspension.

It is further ORDERED that, as directed in the Board's March 23, 2023, Summary Order in this matter, Respondent must comply with the requirements of Part 6, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. Respondent shall forthwith give notice by certified mail, of the six-month suspension of Respondent's license to practice law in the Commonwealth of Virginia (the "Suspension"), to all clients for whom he is currently handling matters and to all opposing Attorneys and presiding Judges in pending litigation. Respondent shall also make appropriate arrangements for the disposition of matters then in Respondent's

care in conformity with the wishes of his client. Respondent shall give such notice immediately and in no event later than 14 days of the effective date of the Suspension, and make such arrangements as are required herein as soon as is practicable and in no event later than 45 days of the effective date of the Suspension. Respondent shall also furnish proof to the Clerk of the Disciplinary System of the Virginia State Bar within 60 days of the effective date of the Suspension that such notices have been timely given and such arrangements have been made for the disposition of matters.

It is further ORDERED that if Respondent is not handling any client matters on the effective date of the Suspension, Respondent shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar within 60 days of the effective day of the Suspension. The Board shall decide all issues concerning the adequacy of the notice and arrangements required herein. The burden of proof shall be on Respondent to show compliance. If Respondent fails to show compliance, the Board may impose a sanction of Revocation or additional Suspension for failure to comply with the requirements of subparagraph 13-29.

It is further ORDERED that pursuant to Part 6, Section IV, Paragraph 13-9.E of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System shall assess all costs against the respondent.

It is further ORDERED that the Clerk of the Disciplinary System shall mail an attested copy of this order to the Respondent by certified mail, return receipt requested, by regular first-class mail and by electronic mail to his address of record with the Virginia State Bar and by electronic mail to Seth T. Shelley, Assistant Bar Counsel.

ENTERED this 24th day of April, 2023.

VIRGINIA STATE BAR DISCIPLINARY BOARD

_____
David J. Gogal, Second Vice Chair